Michael R. Headley (SBN 220834)
headley@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Of counsel:

Kurt L. Glitzenstein (*pro hac vice* pending)
glitzenstein@fr.com
Frank E. Scherkenbach (SBN 142549)
scherkenbach@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, Massachusetts 02210
Telephone: (617) 368-2125
Facsimile: (617) 542-8906

Attorneys for Plaintiffs ASML Netherlands B.V., ASML US, L.P., and ASML US, LLC

*Additional counsel listed on signature page*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASML NETHERLANDS B.V., ASML US, L.P., and ASML US, LLC,<br><br>　　　　　　　Plaintiffs,<br>v.<br>NIKON CORPORATION, NIKON RESEARCH CORPORATION OF AMERICA, and NIKON PRECISION INC.,<br>　　　　　　　Defendants. | CASE NO. 3:18-cv-5592<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR PATENT INFRINGEMENT

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs ASML Netherlands B.V., ASML US, L.P., and ASML US, LLC (collectively, "ASML"), by and through their attorneys, bring this Complaint against Nikon Corporation, Nikon Research Corporation of America, and Nikon Precision Inc. (collectively, "Defendants" or "Nikon"), and hereby alleges as follows:

**NATURE OF ACTION**

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., specifically including 35 U.S.C. § 271.

**THE PARTIES**

2. Plaintiff ASML Netherlands B.V. is a corporation incorporated in the Netherlands with its principal place of business located at De Run 6501, 5504 DR, Veldhoven, The Netherlands.

3. Plaintiff ASML US L.P. is a corporation incorporated in Delaware with its principal place of business located at 2650 West Geronimo Place, Chandler AZ 85224.

4. Plaintiff ASML US, LLC is a corporation incorporated in the State of Delaware with its principal place of business located at 2650 W. Geronimo Place, Chandler, Arizona 85224.

5. On information and belief, Defendant Nikon Corporation is a corporation organized under the laws of Japan and having a principal place of business at Shinagawa Intercity Tower C, 2-15-3, Konan, Minato-ku, Tokyo 108-6290, Japan. On information and belief, Nikon Corporation uses the terms "Nikon Group" to refer to all the affiliated Nikon companies (which Nikon refers to as "Nikon Group Companies").

6. On information and belief, Defendant Nikon Research Corporation of America is a California corporation with a principal place of business at 1399 Shoreway Road, Belmont, California 94002. Nikon Research Corporation of is a subsidiary of Defendant Nikon Corporation, and is a Nikon Group Company.

7. On information and belief, Defendant Nikon Precision Inc. is a corporation organized under the laws of California, having a principal place of business at 1399 Shoreway Road, Belmont, California 94002. Nikon Precision Inc. is a subsidiary of Defendant Nikon Corporation, and is a Nikon Group Company.

8. On information and belief, Nikon conducts business operations throughout the United States, including in the State of California.

## JURISDICTION

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

## PERSONAL JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Nikon because, *inter alia*, Nikon has conducted and continues to conduct business in this judicial district, either directly, or through its subsidiaries, agents, and/or affiliates including, upon information and belief, by marketing, selling, offering for sale, maintaining, testing, and servicing lithography systems in the Northern District of California.

11. On information and belief, Nikon Corporation designs and manufactures semiconductor lithography systems, including systems that are accused of infringement in this action, outside the United States that it offers to sell and sells either directly to customers in the United States, including in the State of California, or provides directly or indirectly to Nikon Precision Inc., a California-based subsidiary of Nikon Corporation that imports and sells, maintains, and services the Accused Systems in the United States.

12. Nikon Precision Inc. is organized under the laws of California, has a principal place of business in the Northern District of California at 1399 Shoreway Road, Belmont, California 94002, and has designated Naomi Obinata, 1399 Shoreway Road, Belmont, California 94002 as an agent for service of process in filings with the California Secretary of State. On information and belief, Nikon Precision Inc. imports, sells, and/or services the Accused Systems in the United States.

13. Nikon Research Corporation of America is also organized under the laws of California, has a principal place of business in the Northern District of California at 1399 Shoreway Road, Belmont, California 94002, and has designated Brett Herr, 1399 Shoreway Road, Belmont, California 94002 as an agent for service of process in filings with the California Secretary of State. On information and belief, Nikon Research Corporation of America develops and performs research

related to the accused lithography systems that are offered for sale, sold, or imported in the United States, either directly or indirectly, by Nikon Corporation or Nikon Precision Inc.

14. In addition, Nikon Corporation and Nikon Precision Inc. have previously elected to avail themselves of the benefits of litigating patent disputes in the Northern District of California. *See Nikon Corporation and Nikon Precision Inc. v. ASM Lithography B.V. and ASM Lithography Inc.*, C.A. No. 3:01-cv-5031 (N.D. Cal. filed Dec. 21, 2001); *Nikon Corporation and Nikon Precision Inc. v. ASM Lithography B.V. and ASM Lithography Inc.*, C.A. No. 3:02-cv-5081 (N.D. Cal. filed Oct. 18, 2002).

15. This Court has jurisdiction over this action against the defendants because the subject matter of the action satisfies the requirements of 35 U.S.C. § 299(a) in that (1) it arises, at least in part, out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, and/or selling of the same accused products, and (2) questions of fact common to the defendants will arise in the action.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400. Defendants Nikon Precision Inc. and Nikon Research Corporation of America reside in the Northern District of California at least because they are both incorporated in California, with their principal place of business (1399 Shoreway Road, Belmont, California 94002) located in the Northern District of California. In addition, upon information and belief, Nikon makes, uses, offers to sell, sells, and/or imports into this judicial district the accused lithography systems that infringe the patents asserted in this action either directly or indirectly, and has a regular and established place of business including the offices at 1399 Shoreway Road, Belmont, California 94002, located in the Northern District of California.

**INTRADISTRICT ASSIGNMENT**

17. This is an intellectual property action, which this Court assigns on a district-wide basis pursuant to Civil L.R. 3-2(c).

**PATENTS-IN-SUIT**

18. On November 13, 2007, United States Patent No. 7,295,283 ("the '283 Patent"), entitled "Lithographic Apparatus and Device Manufacturing Method," was duly and legally issued by the PTO. A true and correct copy of the '283 Patent is attached as **Exhibit 1** to this Complaint.

19. On July 22, 2008, United States Patent No. 7,403,264 ("the '264 Patent"), entitled "Lithographic Apparatus and Device Manufacturing Method Involving a Heater," was duly and legally issued by the PTO. A true and correct copy of the '264 Patent is attached as **Exhibit 2** to this Complaint.

20. On November 17, 2015, United States Patent No. 9,188,880 ("the '880 Patent"), entitled "Projection Objective for a Microlithographic Projection Exposure Apparatus," was duly and legally issued by the PTO. A true and correct copy of the '880 Patent is attached as **Exhibit 3** to this Complaint.

21. The '283, '264, and '880 Patents are collectively referred to herein as the "Patents-in-Suit."

22. By assignment, ASML owns all right, title, and interest in and to each of the Patents-in-Suit. ASML possesses the sole, exclusive, and undivided right to sue for infringement and collect damages for past and future infringement of each of the Patents-in-Suit. Nikon has no license or authority under any of the Patents-in-Suit.

**FACTUAL BACKGROUND**

23. Founded in 1984 to develop lithography systems and originally located in a wooden shed next to a Philips building in Eindhoven, the Netherlands, ASML (including its affiliates) is now one of the world's leading manufacturers of chip-making equipment.

24. On information and belief, Nikon Corporation designs and manufactures lithography systems that infringe one or more claims of the Patents-in-Suit, directly or indirectly, including but not limited to Nikon's NSR-S631E, NSR-S650D, NSR-S630D, NSR-S622D, NSR-S621D, NSR-S620D, NSR-S322F, and NSR-S320F lithography systems, and/or other similarly-configured lithography systems (hereinafter, collectively the "Accused Systems").

25. On information and belief, Nikon Precision Inc. is a U.S. subsidiary of Nikon Corporation that imports and sells, maintains and services in the United States, the Accused Systems.

26. On information and belief, Nikon Research Corporation of America is a U.S. subsidiary of Nikon Corporation that performs research and development with respect to the accused Nikon lithography machines, systems, and components.

27. On information and belief, Defendants import the Accused Systems into the United States, offer to sell and sell the Accused Systems within the United States, and advertise, promote, install, test, assemble, maintain, service, and instruct third parties to use the Accused Systems within the United States.

28. For example, Nikon has partnered with the State University of New York College of Nanoscale Science and Engineering (CNSE) in Albany, New York and the Global 450mm Consortium ("G450C") to import, install, and use a NSR-S650D system in Albany, New York. *See* **Exhibit 4** (Nikon President Kazuo Ushida announcing that a "450 mm immersion scanner, the NSR-S650D, has been installed at SUNY Polytechnic Institute's Colleges of Nanoscale Science and Engineering (SUNY Poly CNSE) and is transitioning to wafer patterning.").

29. In addition, on information and belief, Nikon has imported, offered for sale, and sold the Accused Systems to Intel Corporation in the United States. For example, in the Spring 2016 Edition of The Nikon eReview, Nikon reported on a presentation given by Dr. Mark Phillips, Intel Fellow and Director of Lithography and Hardware Solutions, in which Dr. Phillips reported on the performance of "the latest generation NSR-S631E immersion scanner single machine overlay (SMO)," concluding that this tool is "already outperforming the previous generation toolset [the NSR-S622D]." *See* **Exhibit 5** at 3. Dr. Phillips is employed by Intel at its Hillsboro, OR, facility, where Intel is known to operate a development fab for process technology for the smallest integrated circuit features. *See* **Exhibits 6, 7**.

30. On information and belief, Nikon has also imported, offered for sale, and sold a NSR-S630D system within the United States. Nikon announced that it "started shipments of the new NSR-S630D equipment that offers extremely high overlay accuracy and productivity." *See* **Exhibit 8** at 43.

31. In May 2015, Barclays reported that Nikon sold nine ArF immersion lithography units for the fiscal year ending in March 2015, with "[s]ales to a North American MPU maker account[ing] for most of these nine units." **Exhibit 9** at 19. On information and belief, Intel is the North American MPU maker referenced in this report. Barclays further reported that Nikon "targets immersion system sales at 12 units" for FY3/16. *Id.* This projection "includes multiple 450 mm units." *Id.* Barclays "expect[ed] the North American MPU maker [i.e., on information and belief, Intel] to account for a majority of sales again in FY3/16." *Id.* Barclays explained that "Nikon seeks to regain ground for immersion systems based on the new S630D," and that "Nikon expects order negotiations based on S630D evaluation results to ramp up in FY3/16, and it seeks to expand market share from FY3/2017." *Id.* at 20. In May 2016, Nikon reported its actual total worldwide sales of immersion lithography machines, including refurbished machines, for the fiscal year ending 2016 was six machines. **Exhibit 10** at 6. In February 2017, Nikon estimated its total worldwide sales of immersion lithography machines, including refurbished machines, for the fiscal year ending March 2017 would be nine machines. **Exhibit 11** at 29. In May 2018, Nikon reported that the actual total worldwide sales of immersion lithography machines, including refurbished machines, for the fiscal year ending March 2018 was five machines, and it estimated that total global sales of such machines would be seven (7) machines for the fiscal year ending 2019. **Exhibit 12** at 30-31.

32. On information and belief, Nikon has also imported into the United States or sold for importation into the United States the accused NSR-S621D machine. The NSR-S621D was released in January 2012. *See* **Exhibit 13** at 1. A 2012 press release explains that Nikon System Design Section Manager, Shinji Wakamoto, made a presentation regarding the NSR-S621D scanners, "which are currently shipping to customers globally." *See* **Exhibit 14**.

33. In addition, Nikon has promoted and offered Accused Systems for sale at various semiconductor technology conferences in the San Francisco, California area, including LithoVision, SEMICON West, and the Semiconductor Technology Symposium.

34. Furthermore, on its website, Nikon states that the "main business" of its subsidiary Nikon Precision Inc. is the "[i]mport, sales, maintenance and servicing of semiconductor lithography systems." **Exhibit 15**. On information and belief, Nikon had prior knowledge of each of the Patents-

in-Suit through its monitoring, review, and analysis of ASML's patent portfolio. For example, on information and belief, Nikon knows that ASML is one of the primary suppliers of lithography systems worldwide, including for the United States market, and that ASML lithography systems compete with those made or sold by Nikon. In addition, on information and belief, Nikon has engaged in competitive intelligence of ASML, including by actively monitoring and reviewing ASML's patent portfolio, and gained pre-suit knowledge of the Patents-in-Suit as a result of such monitoring and review.

35. Furthermore, on information and belief, Nikon monitored, reviewed, and analyzed ASML's patent portfolio as part of the process of identifying multiple patent families among ASML's patent portfolio to license from ASML, pursuant to a 2004 patent cross-license agreement between Nikon and ASML. *See* **Exhibit 16**. Nikon is no longer licensed under any of the patents-in-suit.

## COUNT I

### (Infringement of U.S. Patent No. 7,295,283)

36. Plaintiff repeats and re-alleges paragraphs 1-35 above as if fully set forth herein.

37. On information and belief, Nikon infringes one or more claims of the '283 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1.

38. Nikon has directly infringed, and continues to directly infringe, at least claim 1 of the '283 Patent under 35 U.S.C. § 271(a) by using, selling, and/or offering for sale the Accused Systems within the United States, and/or by importing the Accused Systems into the United States.

39. **Exhibit 18** to this Complaint describes a non-limiting example of Nikon's infringement, based on ASML's current information and belief. ASML reserves the right to amend and/or supplement this description and to identify additional examples of Nikon's infringement, including additional asserted claims, pursuant to the Federal Rules of Civil Procedure, to this Court's Local Rules and Patent Local Rules, and/or as is otherwise appropriate. As described in **Exhibit 18**, the Accused Systems satisfy each and every limitation of at least claim 1 of the '283 Patent, literally or under the doctrine of equivalents.

40. In addition, Nikon has actively induced, and continues to actively induce, infringement of at least claim 1 of the '283 Patent under 35 U.S.C. § 271(b) by inducing third parties (such as

CNSE, G450C, Intel, and others) to use the infringing Accused Systems within the United States. Furthermore, on information and belief, Nikon Corporation has actively induced and continues to actively induce Nikon Precision Inc. to infringe by using, selling, and/or offering for sale infringing Accused Systems within the United States, and/or by importing the infringing Accused Systems into the United States.

41.     On information and belief, Nikon has prior knowledge of the '283 Patent from its monitoring, review, and analysis of ASML's patent portfolio, as alleged in Paragraphs 34 and 35, above. Nikon also had prior knowledge of the '283 Patent during the time that Nikon had a license to the '283 Patent. Furthermore, Nikon has had actual notice of the '283 Patent at least upon the filing or service of this Complaint.

42.     On information and belief, Nikon has acted and continues to act with actual knowledge that its Accused Systems infringe the '283 Patent, and/or has acted and continues to act with at least willful blindness to the infringement. For example, on information and belief, Nikon knows that ASML and Nikon are the two primary suppliers of immersion lithography systems worldwide, including for the United States market, and that ASML immersion lithography systems compete with Nikon's. Thus, on information and belief, Nikon has actively monitored and gained knowledge of ASML's patent portfolio relating to semiconductor lithography, including the '283 Patent. Thus, on information and belief, Nikon knows of the infringement or at least subjectively believes there is a high probability of the infringement. On information and belief, Nikon's decision to continue inducing the infringement, despite having at least a subjective belief in a high probability of infringement, resulted from deliberate actions to avoid learning of the infringement. Furthermore, Nikon has had actual notice of the Accused Products' infringement of the '283 Patent at least since the filing or service of this Complaint.

43.     On information and belief, Nikon knowingly induces infringement of the '283 Patent with specific intent to do so including by providing at least manuals, training, and/or other support, to perform acts intended by Nikon to cause direct infringement of at least claim 1 of the '283 Patent. *See, e.g.*, **Exhibit 18**. On information and belief, Nikon creates and distributes technical, marketing, sales, installation, maintenance, service, and product literature for the Accused Systems, including

materials that specifically promote benefits that Nikon achieves using the patented technology. *Id*. Furthermore, on information and belief, Nikon offers technical, marketing, sales, installation, maintenance, service, and product support for the Accused Products. For example, Nikon Precision, Inc. lists "maintenance and servicing of semiconductor lithography systems" as part of its main business. **Exhibit 15**. Nikon's activities are designed to instruct, encourage, enable, and facilitate the use, sale, offer for sale, and importation of the infringing Accused Products, and Nikon knows or is willfully blind to the fact that the Accused Products infringe the '283 patent.

44. Furthermore, Nikon has contributed to, and continues to contribute to, infringement of at least claim 1 of the '283 Patent under 35 U.S.C. § 271(c) by importing the Accused Systems into the United States, and offering for sale and/or selling the Accused Systems within the United States. The Accused Systems constitute a material part of the invention, at least because they satisfy each element of claim 1 of the '283 Patent, literally or under the doctrine of equivalents. *See* **Exhibit 18**. Furthermore, for at least the same reason, the Accused Systems are especially made or adapted for use in infringement of the '283 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. *See id.* As described in the preceding paragraph, Nikon has acted with knowledge that the Accused Systems are especially made or adapted for use in infringement of the '283 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

45. ASML has no adequate remedy at law for the acts of infringement by Nikon. As a direct and proximate result of Nikon's acts of infringement, ASML has suffered and continues to suffer damages and irreparable harm. Unless Nikon's acts of infringement are enjoined by this Court, ASML will continue to be damaged and irreparably harmed.

46. ASML is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

47. Nikon has infringed the '283 Patent as alleged above despite having prior knowledge of the patent and has acted with willful, intentional, and conscious disregard of the objectively high likelihood that its acts constitute infringement of the '283 Patent. Nikon's infringement of the '283

Patent has been and continues to be willful, entitling ASML to enhanced damages under 35 U.S.C. § 284.

## COUNT II

### (Infringement of U.S. Patent No. 7,403,264)

48. Plaintiff repeats and re-alleges paragraphs 1-47 above as if fully set forth herein.

49. On information and belief, Nikon infringes one or more claims of the '264 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1.

50. Nikon has directly infringed, and continues to directly infringe, at least claim 1 of the '264 Patent under 35 U.S.C. § 271(a) by using, selling, and/or offering for sale the Accused Systems within the United States, and/or by importing the Accused Systems into the United States.

51. **Exhibit 19** to this Complaint describes a non-limiting example of Nikon's infringement, based on ASML's current information and belief. ASML reserves the right to amend and/or supplement this description and to identify additional examples of Nikon's infringement, including additional asserted claims, pursuant to the Federal Rules of Civil Procedure, to this Court's Local Rules and Patent Local Rules, and/or as is otherwise appropriate. As described in **Exhibit 19**, the Accused Systems satisfy each and every limitation of at least claim 1 of the '264 Patent, literally or under the doctrine of equivalents.

52. In addition, Nikon has actively induced, and continues to actively induce, infringement of at least claim 1 of the '264 Patent under 35 U.S.C. § 271(b) by inducing third parties (such as CNSE, G450C, Intel, and others) to use the infringing Accused Systems within the United States. Furthermore, on information and belief Nikon Corporation has actively induced and actively continues to induce Nikon Precision Inc. to infringe by using, selling, and/or offering for sale infringing Accused Systems within the United States, and/or by importing the infringing Accused Systems into the United States.

53. On information and belief, Nikon has prior knowledge of the '264 Patent from its monitoring, review, and analysis of ASML's patent portfolio, as alleged in Paragraphs 34 and 35, above. Nikon also had prior knowledge of the '264 Patent during the time that Nikon had a license

to the '264 Patent. Furthermore, Nikon has had actual notice of the '264 Patent at least upon the filing or service of this Complaint.

54. On information and belief, Nikon has acted and continues to act with actual knowledge that its Accused Systems infringe the '264 Patent, and/or has acted and continues to act with at least willful blindness to the infringement. For example, on information and belief, Nikon knows that ASML and Nikon are the two primary suppliers of immersion lithography systems worldwide, including for the United States market, and that ASML immersion lithography systems compete with Nikon's. Thus, on information and belief, Nikon has actively monitored and gained knowledge of ASML's patent portfolio relating to semiconductor lithography, including the '264 Patent. Thus, on information and belief, Nikon knows of the infringement or at least subjectively believes there is a high probability of the infringement. On information and belief, Nikon's decision to continue inducing the infringement, despite having at least a subjective belief in a high probability of infringement, resulted from deliberate actions to avoid learning of the infringement. Furthermore, Nikon has had actual notice of the Accused Products' infringement of the '264 Patent at least since the filing or service of this Complaint.

55. On information and belief, Nikon knowingly induces infringement of the '264 Patent with specific intent to do so including by providing at least manuals, training, and/or other support, to perform acts intended by Nikon to cause direct infringement of at least claim 1 of the '264 Patent. *See, e.g.*, Exhibit 19. On information and belief, Nikon creates and distributes technical, marketing, sales, installation, maintenance, service, and product literature for the Accused Systems, including materials that specifically promote benefits that Nikon achieves using the patented technology. *Id*. Furthermore, on information and belief, Nikon offers technical, marketing, sales, installation, maintenance, service, and product support for the Accused Products. For example, Nikon Precision, Inc. lists "maintenance and servicing of semiconductor lithography systems" as part of its main business. **Exhibit 15**. Nikon's activities are designed to instruct, encourage, enable, and facilitate the use, sale, offer for sale, and importation of the infringing Accused Products, and Nikon knows or is willfully blind to the fact that the Accused Products infringe the '264 patent.

56. Furthermore, Nikon has contributed to, and continues to contribute to, infringement of at least claim 1 of the '264 Patent under 35 U.S.C. § 271(c) by importing the Accused Systems into the United States, and offering for sale and/or selling the Accused Systems within the United States. The Accused Systems constitute a material part of the invention, at least because they satisfy each element of claim 1 of the '264 Patent, literally or under the doctrine of equivalents. *See* **Exhibit 19**. Furthermore, for at least the same reason, the Accused Systems are especially made or adapted for use in infringement of the '264 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. *See id.* As described in the preceding paragraph, Nikon has acted with knowledge that the Accused Systems are especially made or adapted for use in infringement of the '264 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

57. ASML has no adequate remedy at law for the acts of infringement by Nikon. As a direct and proximate result of Nikon's acts of infringement, ASML has suffered and continues to suffer damages and irreparable harm. Unless Nikon's acts of infringement are enjoined by this Court, ASML will continue to be damaged and irreparably harmed.

58. ASML is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

59. Nikon has infringed the '264 Patent as alleged above despite having prior knowledge of the patent and has acted with willful, intentional, and conscious disregard of the objectively high likelihood that its acts constitute infringement of the '264 Patent. Nikon's infringement of the '264 Patent has been and continues to be willful, entitling ASML to enhanced damages under 35 U.S.C. § 284.

## COUNT III

### (Infringement of U.S. Patent No. 9,188,880)

60. Plaintiff repeats and re-alleges paragraphs 1-59 above as if fully set forth herein.

61. On information and belief, Nikon infringes one or more claims of the '880 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1.

62. Nikon has directly infringed, and continues to directly infringe, at least claim 1 of the '880 Patent under 35 U.S.C. § 271(a) by using, selling, and/or offering for sale the Accused Systems within the United States, and/or by importing the Accused Systems into the United States.

63. **Exhibit 20** to this Complaint describes a non-limiting example of Nikon's infringement, based on ASML's current information and belief.  ASML reserves the right to amend and/or supplement this description and to identify additional examples of Nikon's infringement, including additional asserted claims, pursuant to the Federal Rules of Civil Procedure, to this Court's Local Rules and Patent Local Rules, and/or as is otherwise appropriate.  As described in **Exhibit 20**, the Accused Systems satisfy each and every limitation of at least claim 1 of the '880 Patent, literally or under the doctrine of equivalents.

64. In addition, Nikon has actively induced, and continues to actively induce, infringement of at least claim 1 of the '880 Patent under 35 U.S.C. § 271(b) by inducing third parties (such as CNSE, G450C, Intel, and others) to use the infringing Accused Systems within the United States. Furthermore, on information and belief Nikon Corporation has actively induced and continues to actively induce Nikon Precision Inc. to infringe by using, selling, and/or offering for sale infringing Accused Systems within the United States, and/or by importing the infringing Accused Systems into the United States.

65. On information and belief, Nikon has prior knowledge of the '880 Patent from its monitoring, review, and analysis of ASML's patent portfolio, as alleged in Paragraphs 34 and 35, above.  Furthermore, Nikon has had actual notice of the '880 Patent at least upon the filing or service of this Complaint.

66. On information and belief, Nikon has acted and continues to act with actual knowledge that its Accused Systems infringe the '880 Patent, and/or has acted and continues to act with at least willful blindness to the infringement.  For example, on information and belief, Nikon knows that ASML and Nikon are the two primary suppliers of immersion lithography systems worldwide, including for the United States market, and that ASML immersion lithography systems compete with Nikon's.  Thus, on information and belief, Nikon has actively monitored and gained knowledge of ASML's patent portfolio relating to semiconductor lithography, including the '880 Patent.  Thus, on

information and belief, Nikon knows of the infringement or at least subjectively believes there is a high probability of the infringement. On information and belief, Nikon's decision to continue inducing the infringement, despite having at least a subjective belief in a high probability of infringement, resulted from deliberate actions to avoid learning of the infringement. Furthermore, Nikon has had actual notice of the Accused Products' infringement of the '880 Patent at least since the filing or service of this Complaint.

67.     On information and belief, Nikon knowingly induces infringement of the '880 Patent with specific intent to do so including by providing at least manuals, training, and/or other support, to perform acts intended by Nikon to cause direct infringement of at least claim 1 of the '880 Patent. *See, e.g.*, Exhibit 20. On information and belief, Nikon creates and distributes technical, marketing, sales, installation, maintenance, service, and product literature for the Accused Systems, including materials that specifically promote benefits that Nikon achieves using the patented technology. *Id*. Furthermore, on information and belief, Nikon offers technical, marketing, sales, installation, maintenance, service, and product support for the Accused Products. For example, Nikon Precision, Inc. lists "maintenance and servicing of semiconductor lithography systems" as part of its main business. **Exhibit 15**. Nikon's activities are designed to instruct, encourage, enable, and facilitate the use, sale, offer for sale, and importation of the infringing Accused Products, and Nikon knows or is willfully blind to the fact that the Accused Products infringe the '880 patent.

68.     Furthermore, Nikon has contributed to, and continues to contribute to, infringement of at least claim 1 of the '880 Patent under 35 U.S.C. § 271(c) by importing the Accused Systems into the United States, and offering for sale and/or selling the Accused Systems within the United States. The Accused Systems constitute a material part of the invention, at least because they satisfy each element of claim 1 of the '880 Patent, literally or under the doctrine of equivalents. *See* **Exhibit 20**. Furthermore, for at least the same reason, the Accused Systems are especially made or adapted for use in infringement of the '880 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. *See id.* As described in the preceding paragraph, Nikon has acted with knowledge that the Accused Systems are especially made or adapted for use in infringement of

the '880 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

69. ASML has no adequate remedy at law for the acts of infringement by Nikon. As a direct and proximate result of Nikon's acts of infringement, ASML has suffered and continues to suffer damages and irreparable harm. Unless Nikon's acts of infringement are enjoined by this Court, ASML will continue to be damaged and irreparably harmed.

70. ASML is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

71. Nikon has infringed the '880 Patent as alleged above despite having prior knowledge of the patent and has acted with willful, intentional, and conscious disregard of the objectively high likelihood that its acts constitute infringement of the '880 Patent. Nikon's infringement of the '880 Patent has been and continues to be willful, entitling ASML to enhanced damages under 35 U.S.C. § 284.

## REQUESTED RELIEF

Plaintiff respectfully seeks the following relief:

a) For a judgment in favor of ASML that each Defendant has infringed, induced others to infringe, and/or contributorily infringed the Patents-in-Suit;

b) For an award of damages sufficient to compensate ASML for Nikon's infringement of the Patents-in-Suit, including lost profits suffered by ASML as a result of Nikon's infringement, in an amount not less than a reasonable royalty;

c) For a judgment in favor of ASML permanently enjoining Defendants, their directors, officers, agents, servants and employees, and those acting in privity or in concert with them, and their parents, subsidiaries, divisions, branches, affiliates, successors and assigns, from further acts of infringement, induced infringement, or contributory infringement of the Patents-in-Suit;

d) For a judgment that Nikon's direct and indirect infringement has been willful;

e) For an award of increased damages in an amount not less than three times the damages assessed for Defendants' infringement of the Patents-in-Suit, in accordance with 35 U.S.C. § 284;

f)   For a judgment in favor of ASML that this case is "exceptional" under 35 U.S.C. § 285, and an award to ASML of its reasonable attorneys' fees incurred in this action;

g)   For an award of pre- and post-judgment interest, and the taxation of all allowable costs against Nikon;

h)   That Nikon be ordered to provide an accounting for the damages resulting from the infringement of the Patents-in-Suit, together with interest and costs, and all other damages permitted by 35 U.S.C. § 284, including an accounting for infringing acts not presented at trial and an award by the court of additional damages for any such infringing acts; and

i)   For such other and further relief as this Court shall deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, ASML demands a trial by jury on all issues on which trial by jury is available under applicable law.

Dated: September 12, 2018     FISH & RICHARDSON P.C.

 */s/ Michael R. Headley*
Michael R. Headley

Attorneys for Plaintiffs, ASML Netherlands B.V., ASML US, L.P., and ASML US, LLC

*Additional counsel:*

Andrew Kopsidas (pro hac vice pending)
Kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W. Suite 1000
Washington, D.C. 20024
Telephone: 202-783-5070
Facsimile: 202-783-2331